[Crim. No. 1147. Second Appellate District, Division One.—March 24, 1925.]

THE PEOPLE, Respondent, v. W. H. YATES, Appellant.

[1] Criminal Law—Robbery—Accomplices—Evidence.—On this appeal from a judgment of conviction of the crime of robbery, the record disclosed no evidence from which it might be deduced that any one of the witnesses produced by the prosecution to corrobo-

----

1. Who are accomplices, note, 138 Am. St. Rep. 272. See, also, 1 R. C. L. 157.

rate the testimony of defendant's accomplice was an accomplice within the meaning of the statute.

[2] ID.—SUGGESTION TO JOIN DEFENDANT IN CRIME — ACCOMPLICE.— The fact that defendant suggested to a certain person the feasibility of committing the crime and intimated that he would like to have him join defendant and a third man in its performance did not constitute such person an accomplice, where said person did not do anything in furtherance of the criminal enterprise.

[3] ID.—ASSISTANCE IN FLIGHT—KNOWLEDGE.—The fact that a certain person who drove defendant to a neighboring town after the robbery and another person who accompanied them knew that, for some reason of which each of· them was ignorant, defendant wished to leave town and go to said neighboring town, did not make said persons accomplices of defendant, where neither of them had any knowledge whatsoever regarding defendant's connection with the robbery, or even that a robbery had been committed.

[4] ID.—ACCOMPLICES—INSTRUCTIONS.—In a prosecution for robbery, prejudicial error may not be predicated upon the failure of the trial court, after instructing the jury generally as to the law affecting the admissibility of, and the weight to be accorded to, the evidence given by accomplices, to give an instruction in the language of the statute by which an accomplice is defined as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given," where no such instruction was requested.

[5] ID.—EVIDENCE — NEWSPAPER ARTICLE — INSTRUCTIONS. — In this prosecution for robbery, the defendant was not prejudicially affected by the reception in evidence of a portion of a certain paper containing an article about the robbery, where such newspaper was used simply to connect up the testimony of one of the witnesses as to a conversation had with defendant, and the jury was so instructed and it was further ·instructed that any statements contained in the article were not to be considered as statements of fact in the case.

[6] ID.—EVIDENCE — POSSESSION OF GUN — CROSS-EXAMINATION. — In such prosecution, one of the accomplices, on direct examination as a witness for the people, having stated that he did not know whether defendant had a gun or not at the time the robbery occurred, the trial court did not err in sustaining the prosecution's objection, on cross-examination by defendant, to a question as to what kind of a gun defendant had at the time.

[7] ID.—EVIDENCE—REPETITION.—In such a prosecution, ·error may not be predicated upon the action of the trial court in sustaining an objection to a question, on the ground that it had already been asked and answered, where that is the fact.

[8] ID.—EVIDENCE—FLIGHT—VERDICT.—In this prosecution for robbery, the evidence as to defendant's flight, coupled with defendant's manner and his many admissions and the evidence showing that he planned the crime, his presence in the vicinity of the crime at the time it was committed, and his conduct immediately thereafter, sufficiently supported the verdict of guilty.

(1) 16 C. J., p. 677, n. 62.    (2) 16 C. J., p. 674, n. 2, 6, New. (3) 16 C. J., p. 675, n. 23, New.    (4) 16 C. J., p. 1000, n. 96, p. 1061, n. 47.    (5) 16 C. J., p. 544, n. 53.    (6) 40 Cyc., p. 2511, n. 32. (7) 40 Cyc., p. 2519, n. 88.    (8) 34 Cyc., p. 1808, n. 78.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert E. Austin, John N. Helmick and O. V. Wilson for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant was convicted on the charge of robbery. He appeals from the judgment and from the order denying his motion for a new trial.

Briefly, the evidence shows that as a messenger from a station of the Pacific Electric Railway Company located at the city of Sherman approached a bank with approximately four thousand dollars in cash in his possession, for the purpose of depositing the money in the bank, he was halted by two men named Hanna and Goslyn, respectively, who ordered the messenger to place the money in an automobile in which the two men had been riding—at the same time telling the messenger that he was "covered" with a pistol by a third man who was standing across the street from the place where the messenger was being robbed. The messenger complied with the order, and the two men, Hanna and Goslyn, escaped, but were shortly thereafter arrested and subsequently convicted of the crime of robbery.

On behalf of the People, Goslyn testified to the details of the robbery as committed by him and Hanna with defendant Yates as the "lookout."

A witness by the name of Moore testified, without objection thereto, that about fifteen days before the robbery occurred defendant had tried to induce Moore to assist defendant and a third man (who was not present at the conversation and with whom Moore was unacquainted) in the commission of the crime but that, while Moore told Yates in effect that he would assist in the contemplated "holdup," he was "just kidding, playing with him, and . . . didn't think he was going to do it, and (Moore) . . . didn't mean anything like that"; that later defendant brought to see the witness the man to whom defendant had referred in their conversation regarding the proposed robbery, which man inquired particularly of Moore regarding the defendant and his occupation—that is, whether or not defendant was a policeman; that on the evening of the day after the robbery had taken place he and defendant had a conversation including the following: "He (defendant) said, 'They made the holdup down in Sherman.' I said, 'Yes, who was it?' He said, 'I don't know, but I believe it was this fellow that came over here with me.' I said, 'Yes, how do you think so?' He said, 'Because I told those fellows how to do it, and since the day we came over here I haven't seen that fellow, so I thought that this thing was over.' He said, 'I didn't think that this fellow was going to do it, so I thought I would call it off.' He said, 'I did not see this fellow any more and I didn't hear anything about this thing, and this fellow, he got somebody else, I guess,' he told me, 'and went and done it himself, and he didn't want to get me with him because maybe he had another best friend than I was,' and he says, 'and wanted to give him the part instead of me.' I asked him, 'Are you sure you wasn't with him?' and he said, 'No.' Then I had to go, and I told him, 'I will be right back.' He said, 'I will be right back, too.' So I told him, 'All right.' He went out and come back in about a half an hour and he brought a newspaper, and then he told me, 'Come here, Tom.' So I stopped and I asked him what, and he says—he looked around and he says, 'I don't like to talk to you right here.' I asked him why, and he said, 'Oh, I feel nervous. Let's go around the back there.' I told him, 'All right.' We went in the corner where the cars were parked. I told him, 'But we can't see the paper here. What is it?' So I light the dash-light off of a car and he

read the paper for me where it says about the holdup, and
then it says on the paper about a fellow with a, wearing a
mustache, black suit on and black hat on, and then the way
the paper said I told him, 'That is you, Yates,' and he said,
'Yes, that is me; it can't be anybody else.' Then I looked at
him and I says, 'No, it ain't' And he says, 'Why? What
makes you think so?' I told him, 'Because the paper says
the fellow with a black mustache and you haven't got it.'
He said, 'Yes, but I shaved it off.' Oh, I laughed, and
then he started to get nervous and shaking there, and I told
him, 'What was the matter?' And he says, 'Nothing, Tom;
I just feel this way because if this fellow pulled off this
thing, the one I talked to, he might want to get me into it
too.' I said, 'Why, you didn't make the holdup with him?'
He said, 'No, but I planned it to him, told him how to make
it,' he says. So I told him, 'That don't make any differ-
ence, I guess,' but he said, 'Yes, it does,' and I told him,
'Yes, and what do you want to do now?' Then he thinked
it over and he told me, 'I guess the best thing I could do was
to get out of town, to be safe.' I told him, 'Yes, you can
do that, too, if you don't feel safe enough here.' Then he
told me, then he thinked it over again, and he said he had a
friend in Sherman, and I told him this way, I told him,
'No, if I would be you I wouldn't go away if I wasn't with
him when they done the holdup, if it is that way you say you
haven't seen him for fifteen days, I wouldn't go away.' He
said, 'Oh, yes, Tom. I got scared. I know I planned this
thing and they will get me in it.' . . . So I told him—then
he asked me—then he told me he would like to get out of
town anyway. So I told him, 'Where do you want to go to?'
He said, 'I would like to go to Riverside,' and I told him,
'Well, why don't you catch the stage?' He said, 'No time
for the stage now.' 'The stage runs until 7:20 or 8:30,' he
told me, 'and the last stage has done passed,' and he got
no time to catch it, 'and then I haven't got no money.'
'Well,' I told him, 'If you want a dollar, I can lend you a
dollar.' '' That thereafter on that evening the witness lent
defendant one dollar, procured an automobile and induced
one Tona to take defendant to the city of Riverside, where
defendant had said that a brother of his was living.

Tona testified that on that night he took defendant to
Riverside, where they arrived at about 2 o'clock A. M. the

next day, and that defendant there produced one dollar with which they bought five gallons of gasoline for use in the automobile in which they had ridden from Los Angeles to Riverside.

A witness named Moreno testified that he accompanied defendant and Tona on the trip to Riverside, and that on one or two occasions on the way there, when it became necessary to make some repairs on the automobile, "he (defendant) got out a couple—when we were going out, he got out in a couple of places and hide (hid) over in the trees while we were fixing the machine."

There was also testimony to the effect that on the day when the robbery took place defendant lived in and was familiar with the city of Sherman and with the practice and method adopted by the Pacific Electric Railway Company and its messenger in depositing funds in the manner which was employed or attempted to be employed on the occasion in question, and that defendant had means of knowledge of the amount of cash likely to be in the possession of such messenger at such times.

Defendant testified that on the day following the robbery he left the city of Sherman and rode on a public bus to the city of Riverside; that on the next day he rode in an automobile with his nephew to Yuma, Arizona, where he boarded a train for El Paso, Texas, which was the place of his residence and where he arrived on the fourth day following the robbery, and at which last-named place he remained until he was extradited and brought back to Los Angeles some two or three months after the robbery occurred.

[1] Appellant's first specification of error is that the trial court erred in refusing to grant a new trial to defendant on the ground of lack of sufficiency of the evidence to sustain a verdict against him. It is urged that Goslyn was an admitted accomplice and that under the provisions of section 1111 of the Penal Code, before defendant could be convicted of the crime with which he was charged, it was necessary that Goslyn's testimony be corroborated by other evidence which tended to connect defendant with the commission of the offense. In connection therewith, appellant contends that Moore, Tona, and Moreno were likewise accomplices, and hence disqualified from furnishing the necessary corroboration of Goslyn's testimony. The record discloses

no evidence from which it may be deduced that any one of the corroborating witnesses was an accomplice within the meaning of the statute. [2] The most that may be inferred is that defendant suggested to the witness Moore the feasibility of committing the crime and intimated that he would like to have him join with defendant and a third man in its perpetration; but the evidence further shows that, while Moore listened to defendant's proposal and told him that he would assist in the commission of the robbery, Moore was "just kidding, playing with him, . . . and didn't mean anything like that." At any rate, whatever may have been Moore's real intentions, whether he was willing or unwilling to become a partner in the criminal enterprise, is of little consequence in view of the lack of evidence that as a matter of fact he ever actually did anything in furtherance thereof. He may have suspected that defendant was considering the advisability of committing the crime and that he would like to have Moore join with him in its commission; but if Moore neither actually participated in its commission nor conspired to commit it, he cannot be said to have been an accomplice. [3] Regarding the testimony given by the witnesses Tona and Moreno, the evidence shows that the only knowledge possessed by either of them was that, for some reason of which each of them was ignorant, defendant wished to leave Los Angeles and go to the city of Riverside. So far as the record shows, at the time to which their testimony relates neither of them had any knowledge whatsoever regarding defendant's connection with the robbery, or even that a robbery had been committed. It necessarily follows that appellant's contention in that connection cannot be sustained.

[4] Appellant also complains that, while the judge of the trial court correctly instructed the jury generally as to the law affecting the admissibility of, and the weight to be accorded to, the evidence given by accomplices, no instruction was given in the language of the statute by which an accomplice is defined as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Sec. 1111, Pen. Code.)

In the first place, it appears that no such instruction was requested by defendant. He must have known that corroboration of the testimony given by Goslyn was essential to the

successful prosecution of the case against him. Hence, if he thought it proper or advisable for the protection of defendant's rights in the premises that an instruction couched in the language of the statute should be given to the jury, it was his duty to offer such instruction to the court for the consideration of the jury. Goslyn was an admitted accomplice. On the trial it was not even suggested that either of the other witnesses was an accomplice. In the circumstances of the case there was no compelling reason for such an instruction to be given. However, the court did instruct the jury that the defendant could not be convicted on the testimony of an accomplice, unless such testimony was corroborated by other evidence tending to connect the defendant with the commission of the offense. Judged by the evidence, there was no accomplice other than Goslyn, and the jury was properly instructed with reference to the weight which should be attached to his testimony.

[5] Appellant contends that the trial court erred to the prejudice of defendant in admitting a certain newspaper in evidence over defendant's objection.

The newspaper in question was a copy of the one referred to in the testimony of Moore to which reference has been had. The only part thereof to which the attention of the jury was directed was that it was a "Sports Pink"; that it contained a large-type heading, "Shoot P. E. Bandits," and a paragraph as follows: "In a statement to police Hanna, who was wounded in his right arm, said a third bandit had participated in the holdup, and described him simply as wearing a black mustache."

At the time the newspaper was admitted in evidence the judge instructed the jury, "that newspaper is being admitted in evidence simply for the purpose of connecting up the testimony of this witness as to the conversation had with the defendant which he has related, but as to any statements contained in that article they are not to be considered as statements of fact in this case."

The jury was thus plainly told that the newspaper was limited in its effect as evidence to "connecting up" the testimony of the witness Moore with a conversation which such witness testified he had had with defendant. While, for obvious reasons, the value of such testimony was slight, it is possible that it did have a tendency to corroborate the

testimony given by the witness regarding his conversation with defendant. With the limitation placed by the trial judge upon the purpose and effect of the evidence, we are unable to perceive that defendant was prejudicially affected by its reception in evidence.

[6] •Appellant's next specification of error is that the court erroneously refused to permit defendant to cross-examine the witness Goslyn, who testified in behalf of the prosecution. An examination of the transcript to which appellant refers discloses the fact that the witness was being asked regarding a "gun" which defendant was supposed to have had on his person at the time the robbery occurred, and that the witness had stated that he did not know whether defendant had a "gun" or not. Defendant then asked the witness: "Q. What kind of gun?" to which question an objection interposed by the district attorney thereto was sustained by the court. Taking into consideration the fact that immediately before the quoted question was asked the witness had disclaimed any knowledge regarding any "gun" which defendant was supposed to have had, it is difficult to understand how it would have been possible for the witness to answer the question submitted to him. While preceding the question heretofore set forth the witness had testified in substance that at the time the robbery took place he knew that "the defendant" had a "gun" in his pocket, it is clear from subsequent testimony given by the witness that his testimony with reference to a "gun" did not relate to defendant Yates, but did refer to defendant Hanna.

[7] Another specification of error in the ruling of the trial court relates to the sustaining of an objection to a question asked on cross-examination, the basis of the ruling being that the question had heretofore been asked and answered. The record shows that the trial judge was correct in his conclusion in that regard.

[8] It is finally further contended by appellant that the trial court erred in refusing to grant a new trial to defendant for the reason that the evidence was insufficient to support the verdict, because of the fact, as claimed by appellant, that the only evidence of defendant's guilt was that contained in the testimony of the witnesses Moore, Tona, and Moreno regarding defendant's flight, and that such circumstance is not evidence of guilt, but merely tends to show

guilt. But even though solely for the sake of the argument it be admitted that appellant is correct in his statement of the legal principle, and that it is not subject to any limitation or exception (which in fact we are not prepared to do), in view of defendant's manner and his many admissions, including his statement that he had planned the crime; also, the additional facts testified to by other witnesses; that defendant was in the vicinity of the scene of the crime at the time it was committed; that he was without funds; and that he left his place of abode so precipitately and under such suspicious circumstances immediately after the robbery occurred, without any apparently satisfactory reason being shown to the jury therefor—we are constrained to hold that appellant's point that the verdict is not sufficiently supported by the evidence is untenable.

It follows that the judgment and the order denying defendant's motion for a new trial should be affirmed. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 23, 1925.