[Crim. No. 4300. In Bank.—August 22, 1940.]

THE PEOPLE, Respondent, v. JACK WARREN et al., Appellants.

Morris Lavine for Appellants.

Earl Warren, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

THE COURT.—Our consideration of the appeals of the three appellants herein leads us to the conclusion that the opinion of the District Court of Appeal, written by Mr. Presiding Justice York, satisfactorily disposes of all contentions of the three appellants except certain contentions which relate solely to the appeal of appellant Warren. We therefore adopt certain portions of said opinion as the opinion of this court and will thereafter consider the remaining contentions. The portions of said opinion so adopted are as follows:

"Appellants were charged by an amended information with violation of section 2 of the so-called 'Deadly Weapons Act' (Act 1970, Deering's General Laws, 1937 edition), together with certain prior convictions of felonies. This is an appeal from the judgments of conviction and from the order by which appellants' motions for new trial were denied, the following points being urged as grounds for a reversal of said judgments and order: (1) That appellants have been once in jeopardy; (2) that appellant Warren was formerly acquitted of the charge; (3) that the evidence is insufficient to support

the verdict as to appellant Warren; (4) that the court erred in failing to compel an election; (5) that the court erred in instructions given and refused.

"The facts which form the basis of the instant cause are as follows: Around the hour of 1 o'clock on the afternoon of January 9, 1939, appellants Henry and Lilly were arrested in apartment No. 201 of an apartment house located at 2030 South Vermont avenue in the city of Los Angeles, at which time the arresting officers found wrapped in a sweater two guns, People's exhibits 10 and 11, on a shelf in a closet back of a disappearing bed in the living room. Another gun, People's exhibit 9, and shells, were found by the officers in a drawer in this closet. Later in the afternoon appellant Warren was arrested as he was ringing the doorbell of this apartment. In a conversation with the officers, appellant Henry stated that he lived in the apartment; that appellant Lilly had stayed there on the previous night; that the two guns wrapped in the sweater were brought there by appellant Warren and one Kessler and that the gun found in the closet drawer was his (Henry's). Appellant Lilly, in a conversation with the officers, stated that he had put the guns 'there' on the previous night; that two of the guns were brought to the apartment by appellant Warren and said Kessler, and that the third gun belonged to appellant Henry.

"The trial in the instant cause took place on April 20 and 21, 1939, following the trial of action No. 75205, in which the jury convicted appellants Henry and Lilly of four counts of robbery and with being armed at the time of the commission of the offenses, to-wit: on December 23, 1938, and also at the time of their arrest on January 9, 1939. The jury acquitted appellant Warren on each of the counts with which he was charged in the information in cause No. 75205, and found that he was unarmed at the time of the commission of the offenses as well as at the time of his arrest.

"At the instant trial the testimony of one Polonsky relating to the crimes committed on December 23, 1938, of which appellants Henry and Lilly were convicted, as aforesaid, was introduced in evidence to the effect that on said December 23rd, appellants Henry and Lilly held him up and robbed him in an apartment at 365 South Cloverdale, said witness identifying People's exhibit 9 as the gun he saw in the hands of appellant Henry at the time of the robbery, and identifying

People's exhibit 10 as being similar to the gun he saw in the hands of appellant Lilly at that time. Said witness also testified that he was ordered by appellant Henry to turn his pockets inside out and to turn over his wrist watch while appellant Lilly went into a closet and took the witness' wallet out of his coat. The witness Groom testified that around the middle of December, 1938, appellants visited him at his home, at which time appellants Henry and Warren were in possession of People's exhibits 9 and 10.

"Following his arrest on January 9, 1939, appellant Henry stated to officer Tetrick, one of the arresting officers, that before committing the robbery on south Cloverdale, appellants obtained the guns from a man named Cramer with whom they had previously left them. Appellant Lilly told the officers that on the night of December 23, 1938, he was in possession of the nickel-plated gun and appellant Henry was in possession of the blue steel gun. Appellants entered a plea of once in jeopardy and in addition appellant Warren entered a plea of former acquittal, the jury herein returning verdicts for the People on each of said pleas. Certified copies of prior convictions relating to each of the appellants were received in evidence and marked People's exhibits 1, 2, 3 and 4.

"The instant prosecution is based upon section 2 of the Deadly Weapons Act, *supra*, which provides as follows:

" 'On and after the date upon which this act takes effect, no person, not a citizen of the United States of America and no person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state . . . shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. . . . Any person who shall violate the provisions of this section shall be punishable by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding one year or by fine not exceeding five hundred dollars, or by both fine and imprisonment.'

"Section 969c of the Penal Code provides: 'Whenever a defendant is armed with a firearm or other weapon under such circumstances as to bring said defendant within the operation of subdivision 2 of section 1168 of the Penal Code relating to "Certain Minimum Penalties" . . . the fact that the defendant was so armed shall be charged in the indictment

or information or complaint. This charge shall be added to and be a part of the count or each of the counts of the indictment or information or complaint which charge the offense at the time of the commission of which or at the time of the arrest for which the defendant was armed with a weapon.'

■ ''With reference to the first point raised in this appeal, i. e., that appellants have been once in jeopardy for the offense charged by the information herein, it is urged that 'it was obviously the intention of the legislature in adopting section 969c of the Penal Code to provide for the economy of trials and the consolidation of the issues of being armed with a deadly weapon at the time of the commission of the offense or at the time of arrest and upon the finding affirmatively of the jury thereon to give to the defendant the additional punishment which the law prescribes under such conditions, this being an additional five-year minimum period of imprisonment. (Sec. 1168, sub. 2(b), of the Pen. Code.) . . . The defendants in Case No. 75205, Superior Court, were each charged with a prior conviction of felony. Each admitted this prior conviction . . . The issue of whether they were armed at the time of the commission of the offense on December 23, 1938, was specifically placed before the jury. The jury found specifically that Henry and Lilly were so armed on each occasion and further found that Warren was not so armed. Pursuant to these findings judgments were entered against Henry and Lilly and under the law, each of them, by reason of said findings, must receive a minimum sentence of ten years on each count—or five years additional punishment by reason of their *previous conviction* of felony, plus five years by reason of being previously convicted of having been armed with a dangerous or deadly weapon at the time of the commission of the offense and at the time of their arrest, . . . The legislature having seen fit to provide for a single trial to cover both issues herein set forth and the jury having passed *on both issues* the convicted defendants now facing double long and additional punishments on both issues certainly have been once in jeopardy.'

''The sections of the Penal Code pertinent to the point here under discussion are as follows:

'' 'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate pres-

ence, and against his will, accomplished by means of force or fear'. (Sec. 211, Pen. Code.)

" 'All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree.' (Sec. 211a, Pen. Code.)

" 'An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . . ' (Sec. 654, Pen. Code.)

" 'No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted.' (Sec. 687, Pen. Code.)

" 'When the defendant is convicted or acquitted or has been once placed in jeopardy upon an indictment or information, the conviction, acquittal or jeopardy is a bar to another indictment or information for the offense charged in the former, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that indictment or information.' (Sec. 1023, Pen. Code.)

■ "It is true, as contended by appellants that it was necessary to prove that they were armed when they robbed the witness Polonsky on the night of December 23, 1938, in order to constitute the crime then committed as robbery in the first degree. On the other hand, it is also true that the offense which is prohibited by section 2 of the Deadly Weapons Act, i. e., possession or control of a firearm by persons who had been previously convicted of crime, was complete before the robbery took place for the reason that without possession of the deadly weapons which were used in the perpetration of the robbery, that crime could not have been consummated. The possession of a deadly weapon, which is calculated to provoke assaults or worse, has been made an offense under the Deadly Weapons Act for the very purpose of preventing personal violence, and it is therefore incorrect to say that because robbery in the first degree may result from the possession of a firearm in the hands of an ex-convict, that such possession, as a matter of law, becomes so integral

a part of the crime of first degree robbery that the conviction or acquittal thereof is a bar to a subsequent prosecution for the crime of possession of such deadly weapon.

" 'A single act may be an offense against two statutes; and if one statute necessitates proof of a different circumstance or element from that which the other requires, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. . . . Undoubtedly it is within the power of the legislature to create two or more offenses which may be committed by a single act, each of which is punishable by itself. A conviction or acquittal in such case under either statute would be no bar to a conviction under the other, for the accused would not be twice in jeopardy for one offense, but only once in jeopardy for each offense.' (15 Am. Jur. p. 67.) In the case of *People* v. *Bentley*, 77 Cal. 7 [18 Pac. 799, 11 Am. St. Rep. 225], it was held that a conviction of an assault with a deadly weapon, under an information charging an assault with intent to commit murder, is not a bar to a subsequent conviction of an attempt to commit robbery, although the offenses were so closely connected in point of time that it is impossible to separate the evidence relating to them.

"In *People* v. *Perry*, 99 Cal. App. 90, at 93 [277 Pac. 1080], it was held that the crime of carrying a concealed weapon in violation of the Firearms Act (Stats. 1923, p. 695), is separate and distinct from the crime of robbery, and defendant was subject to separate indictment, conviction and punishment for carrying a concealed weapon, irrespective of the result of the robbery prosecution, and notwithstanding that both crimes may have grown out of the same continuous transaction and were committed at the same time.

"It must therefore be concluded that appellants' first and second points have no merit for the reason that the two offenses herein referred to are separate and distinct crimes and the conviction or acquittal of either does not operate as a bar to the subsequent prosecution for the other.

"Appellants urge that where the prosecution relies upon more than one act in a series of alleged acts, the defendant is entitled to an election by the prosecution as to which act it intends to rely upon. It is pointed out that the information charges the offense to have been committed on or about the 9th day of January; that after the trial got

under way, the prosecution presented as its first evidence the date of December 23, 1938, on which date the robbery of Seymour Polonsky took place; that the testimony of Maynard Groom referred to a different date and that when officer Tetrick took the stand, he testified to the events which transpired on January 9, 1939.

"Section 2 of the 'Deadly Weapons Act' prohibits the possession, custody or control of a pistol, revolver, or other firearm capable of being concealed upon the person, by a person who has been convicted of a felony. The statute does not provide that it is an offense for each day that the ex-convict is in possession of the weapon, hence such possession may be continuous and constitute but one offense, especially where, as here, the information does not charge the possession on a specific date or on a particular occasion.

" 'Where an indictment for carrying a concealed weapon charges the commission of the offense in general terms, the state may prove the commission of the offense at any time within the statutory period next preceding the finding of the indictment, but accused will be protected from any prosecution for having carried a concealed weapon about his person within that period. If, however, in an indictment for carrying a concealed weapon, the descriptive averments are so specific as to charge a distinct carrying of a concealed weapon on a particular occasion, then the state is confined to proof of the specific offense therein charged; and in such a case accused would not be in jeopardy of being convicted for having carried a weapon concealed at another time and under different circumstances.' (16 Cor. Jur. 269.)

"It is therefore obvious that the court did not err in refusing to require the prosecution to elect as to which one of the three dates it intended to rely upon for a conviction.

"The appellants finally contend that the court erred in instructions given and refused.

"A motion by appellants for diminution of the record herein was granted by this court, and pursuant to an order which was made on January 22, 1940, a supplemental clerk's transcript has been filed containing the amended information in case number 75205, hereinbefore referred to; as well as a supplemental reporter's transcript containing the comments made, and the oral instructions given, by the court to the jury

just prior to the latter's retirement for deliberation in the instant cause.

"It is here contended that the following oral instruction was erroneously given by the court to the jury: 'It is my opinion and I so instruct you at this time that as to the question of once in jeopardy in this case that said plea is not available to each of the defendants at this time and that there is no merit in that plea at this time and that under my instruction to find on the question of once in jeopardy or former acquittal you should find for the People on each and every one of those charges, and I so admonish you and instruct you at this time; but of course under the law you may render the opposite verdict if you desire. That is your privilege and you are the sole and exclusive judges of the facts and of the weight of the evidence. . . . You are entirely free to exercise your own judgment on any question of fact at issue in this case but as a matter of law I instruct you that in so far as this issue is concerned that I think you should return a verdict for the People on the question of once in jeopardy. . . . *Mr. Lavine:* May I ask the Court to instruct the jury that the comment on the question of jeopardy did not affect the question of guilty or innocent? *The Court:* I think I have fully and fairly completed the instructions to this jury, Mr. Lavine, and I have admonished them and I have so advised them that they are entirely free to exercise their own judgment as to any question of fact submitted to them at this time in this case, and in my opinion they should find for the People on the question of once in jeopardy but they are entirely free to exercise their own judgment on that question; but my opinion is that they should find for the People on that question. The record may so show.'

■ "While the question of once in jeopardy and former acquittal is ordinarily one of fact, the 'question becomes one of law when the evidence in support thereof is uncontradicted and is insufficient to sustain the plea as a matter of law. When such is the case, it is proper for the trial court to instruct the jury to find for the prosecution upon this issue'. (8 Cal. Jur. 286, citing *People* v. *Newell,* 192 Cal. 659 [221 Pac. 622].) ■ The pleas of once in jeopardy and former acquittal, which were interposed in the instant cause, involved the construction by the court of section 969c of the Penal Code and its application to section 2 of the 'Deadly Weapons Act'.

Necessarily, this was a question of law, therefore, the court properly instructed the jury to find for the prosecution upon such pleas. (See, also, *People* v. *Conson,* 72 Cal. App. 509, 511 [237 Pac. 799].)

"Referring to comments made by the court to a jury in a criminal case which are now authorized by article VI, section 19, of the Constitution of this state, it was said in *People* v. *Eudy,* 12 Cal. (2d) 41, at 47 [82 Pac. (2d) 359]: 'Although such remarks should be temperate and unemotional in tenor, he is not confined to specific comments. The right may be exercised in the manner which the judge deems "necessary for the proper determination of the case", and is not confined to a colorless recital of facts. (*People* v. *De Moss,* 4 Cal. (2d) 469 [50 Pac. (2d) 1031]; *People* v. *Ottey,* 5 Cal. (2d) 714 [56 Pac. (2d) 193]; *People* v. *Gosden,* 6 Cal. (2d) 14 [56 Pac. (2d) 211].) Even an expression of his opinion concerning the guilt or innocence of a defendant has been held to be within the scope of comment which may be made, provided the province of the jury is not invaded.'

"The comments of the trial court in the instant case did not amount to an invasion of the province of the jury.

"A careful review of the instructions which were given to the jury conclusively shows that they were fully and fairly informed with regard to the various aspects of the law involved herein, and even though one certain instruction may have been somewhat misleading, as is contended by appellants, it was not so prejudicial as to constitute a miscarriage of justice under section 4½ of article VI of the Constitution. This is also true with respect to the two instructions requested by appellants and which the court refused to give."

The remaining contentions which relate solely to the appeal of appellant Warren are (1) that the evidence is insufficient to support the judgment against him and (2) that the trial court committed prejudicial error in failing to instruct the jury as to what constitutes an accomplice and the necessity for corroboration of the testimony of an accomplice. The first of these contentions is based upon the claim that the only testimony tending to implicate appellant Warren was the uncorroborated testimony of one Groom and upon the further claim that the uncontradicted testimony showed as *a matter of law* that said Groom was an accomplice. The second of these contentions is based upon the claim that even if the

uncontradicted testimony did not show *as a matter of law* that Groom was an accomplice, there was ample evidence to sustain a finding to that effect and therefore the trial court should have submitted this question to the jury under appropriate instructions.

Section 1111 of the Penal Code provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on the trial in the cause in which the testimony of the accomplice is given."

The testimony shows that Groom, like each of the appellants, had been previously convicted of a felony. The testimony further shows that he had been in the company of the three appellants shortly before the commission of the above-mentioned robbery on December 23, 1938. He was arrested at about the time of the arrests of the three appellants but was later released. He was called by the prosecution as a witness against appellants upon this charge of violating section 2 of the Deadly Weapons Act. It is therefore apparent that if said Groom had been in joint possession with appellants of the weapons in question, he would have been liable to prosecution for the identical offense charged.

The testimony of Groom, which implicated appellant Warren, related to a visit of all three appellants, together with one Kessler, to Groom's home shortly before the above-mentioned robbery. His testimony showed that appellants were at that time in possession of the guns which were admitted in evidence, appellant Henry having one of the guns and appellant Warren having the other. Groom denied that he owned or handled either gun, but he admitted that he had previously been given the cylinder of one of the guns and some money by Kessler and had gone to the hardware store with the cylinder where he had purchased some bullets to fit the cylinder and had then returned and given the cylinder and bullets to Kessler.

The consideration of the contentions of appellant Warren is simplified to some extent by the concession of respondent

that the only evidence in the record which may be considered as implicating appellant Warren is the testimony of Groom. In making this statement it is conceded that the evidence of the extrajudicial statements of appellants Henry and Lilly, made outside of the presence of appellant Warren, could not be considered against appellant Warren and that the trial court properly excluded said evidence as to said appellant Warren. It is contended, however, by respondent that the evidence concerning Groom did not show *as a matter of law* that Groom was an accomplice and that it therefore cannot be said *as a matter of law* that the evidence was insufficient to sustain the conviction of appellant Warren. While we believe that there was ample testimony from which the jury might have concluded that Groom was in joint possession with appellants of the weapons in question and was therefore an accomplice, we further believe that reasonable minds might have differed on this question. It therefore cannot be said *as a matter of law* that the evidence was insufficient to sustain the conviction of appellant Warren.

■ The more serious question, however, is raised by appellant Warren's second above-mentioned contention. If the jury had been instructed on the subject of what constitutes an accomplice and the necessity for corroboration of the testimony of an accomplice, it might well have concluded that Groom was an accomplice and that appellant Warren was entitled to an acquittal by reason of the lack of corroboration of Groom's testimony. The trial court did not instruct the jury on this subject and appellant Warren contends that its failure to do so constituted prejudicial error. Under the circumstances presented by the record before us, we are of the opinion that this contention must be sustained. While it is true that appellant Warren did not propose instructions on the subject, we believe it was prejudicial error here for the trial court to fail to give such instructions of its own motion. (*People* v. *Heddens,* 12 Cal. App. (2d) 245 [55 Pac. (2d) 230] ; see, also, *People* v. *Curran,* 24 Cal. App. (2d) 673 [75 Pac. (2d) 1090].)

■ The general rules prescribing the duty of the trial court in the giving of instructions in criminal cases have been stated as follows: ''It is the duty of a court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, where they are not

proposed or presented in writing by the parties themselves. But it is not its duty to give instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them. When the court fully and fairly charges the jury upon the law appertaining to the facts of the case, its failure to instruct on any particular matter deemed essential is not error in the absence of a request for such an instruction.'' (8 Cal. Jur. 309, and cases cited.) All of these general principles should be considered in determining whether the trial court has performed its duty in any particular case.

It may be conceded that the necessity for accomplice instructions is ''developed through the evidence introduced at the trial'', but can it be said that the court ''fully and fairly charges the jury upon the law appertaining to the facts of the case'', when the evidence strongly suggests that the witness, giving the only testimony tending to implicate the accused, is an accomplice and the trial court fails to instruct the jury on the law relating to the insufficiency of the uncorroborated testimony of an accomplice? We think not. Such instructions deal with the vital question of the sufficiency of the evidence to sustain the conviction under the salutary rule laid down in section 1111 of the Penal Code. We therefore believe that it was prejudicial error for the trial court to fail to give such instructions in the present case even though such instructions were not specifically requested by appellant Warren.

In so holding, we are aware of the fact that there is language in certain decisions which may seem at variance with the views above expressed. (See *People* v. *Olds,* 86 Cal. App. 130 [260 Pac. 321]; *People* v. *Lewis,* 136 Cal. App. 405 [29 Pac. (2d) 305]; *People* v. *Yates,* 71 Cal. App. 788 [236 Pac. 185]; *People* v. *Keller,* 124 Cal. App. 673 [12 Pac. (2d) 1066].) Mr. Justice Houser, who is not participating in this decision, wrote the opinions in *People* v. *Olds, supra, People* v. *Lewis, supra, People* v. *Yates, supra,* and he concurred in the opinion in *People* v. *Keller, supra.* Thereafter he wrote the concurring opinion in *People* v. *Heddens, supra.* In the last-mentioned concurring opinion, Mr. Justice Houser said, at page 248, speaking of the decision in *People* v. *Olds, supra,* ''But as this court now understands the law, the declaration in that case of the legal principle that because the defendant

in that action did not request that an instruction be given to the jury respecting the necessity of corroboration of testimony that was given by an accomplice, on appeal from the judgment the appellant was in no position to complain, was too broad, if not inaccurate.'' Said concurring opinion then points out that there was ample corroboration of the testimony of the accomplice in *People* v. *Olds, supra,* and that ''in the light of the record in that case, no prejudice resulted of the nature that would have warranted a reversal. The judgment therein, in any event, should, and probably would, have been affirmed by virtue of the mandate of section 4½ of article VI, of the Constitution.''

In *People* v. *Lewis, supra,* there was likewise ample corroboration of the testimony of the alleged accomplice. In *People* v. *Yates, supra,* the testimony of the accomplice Goslyn was corroborated by the witnesses Moore, Tona and Morena and while the appellant there claimed that these three were also accomplices, the court said at pages 793 and 794, ''The record discloses no evidence from which it may be deduced that any one of the corroborating witnesses was an accomplice within the meaning of the statute.'' In *People* v. *Keller, supra,* the court points out on page 676 that the evidence indicated that the witnesses were ''only feigned accomplices'' and that the court ''instructed the jury on the law concerning feigned accomplices''. It therefore appears that the cases of *People* v. *Olds, supra, People* v. *Lewis, supra, People* v. *Yates, supra,* and *People* v. *Keller, supra,* are all distinguishable upon their facts and that all of said decisions might well have been rested upon the ground that the records in said cases did not show *prejudicial* error requiring a reversal. We are in accord with the views expressed by Mr. Justice Houser in the concurring opinion in *People* v. *Heddens, supra,* indicating that the language employed in the opinion in *People* v. *Olds, supra,* was ''too broad, if not inaccurate''.

 Owing to the conflicting views found in the language of the several opinions above mentioned and in order that our views may not be misunderstood, we deem it appropriate to state that we are of the opinion that whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice, it is the duty of the trial court to instruct the jury upon the law as set forth in section 1111

of the Penal Code; that the failure of the trial court to so instruct the jury under such circumstances, with or without a specific request for such instructions, constitutes error; but that in the event of such failure in any case, the entire record must be considered in determining whether such error constituted prejudicial error requiring a reversal of the judgment of conviction.

As above indicated, there was ample testimony in the present record to warrant the conclusion upon the part of the jury that Groom was an accomplice. It was therefore error for the trial court to fail to instruct upon the law as set forth in section 1111 of the Penal Code. If the jury had been so instructed and had determined upon said instructions that Groom was an accomplice, then it would have been its duty under said instructions to acquit appellant Warren as there was no testimony whatever, other than the testimony of Groom, to implicate appellant Warren. Under these circumstances, the failure to give such instructions was necessarily prejudicial and a reversal is required as to appellant Warren.

The judgments and order with respect to defendants Henry and Lilly are affirmed. The judgment and order with respect to defendant Warren are reversed and the cause is remanded for a new trial as to defendant Warren.

CURTIS, J., Concurring and Dissenting.—I concur in that part of the judgment affirming the conviction of Henry and Lilly, but dissent from that portion thereof reversing the conviction of the defendant Warren.