Filed 2/23/16  P. v. Dupree CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C076732 |
| v. | (Super. Ct. No. 11F02175) |
| ANDRE ANTONIO DUPREE, | |
| Defendant and Appellant. | |

Following a physical altercation between defendant Andre Antonio Dupree and two of three men who were standing on a patio in front of adjacent upstairs apartments, defendant was told to leave and escorted down the stairs by the third man.  As defendant left, one of the men he had just fought called him a "bitch."  Defendant returned a few minutes later with a handgun and told the man to call him that again.  When the man did so, defendant pulled the gun from his waistband and fired two rounds up the stairs.

1

Defendant was convicted by jury of three counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2); Counts One through Three),[1] one count of discharging a firearm in a grossly negligent manner (§ 246.3; Count Four), and two counts of possession of a firearm by a convicted felon (former § 12021 (Stats. 2011, ch. 15, § 501.5), now § 29800; Counts Eight and Twelve).  With respect to the first three counts, the jury also found defendant personally used a firearm in the commission of these offenses (§ 12022.5, subd. (a)).[2]  After a bifurcated court trial on an allegation defendant was previously convicted of a serious felony offense within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12), the trial court found the allegation to be true. Defendant unsuccessfully moved to strike this prior conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), after which he was sentenced to serve an aggregate determinate term of 21 years 4 months in state prison.

On appeal, defendant contends:  (1) his conviction in Count Twelve for possession of a firearm by a convicted felon must be reversed because, although he undoubtedly possessed a firearm on the date he used it to assault three people and also possessed that same firearm the following month when he was arrested, his continuous possession of the same firearm over a single period of time constituted only one violation of former section 12021; (2) the trial court abused its discretion by declining to strike his prior strike conviction under *Romero*; (3) the trial court also abused its discretion by imposing consecutive sentences on Counts Two and Three; and (4) the minute order incorrectly

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    The jury found defendant not guilty of crimes alleged in Counts Five through Seven (involving an incident separate from the crimes committed in Counts One through Four) and could not reach a unanimous verdict as to crimes alleged in Counts Nine through Eleven (involving another separate incident), resulting in a mistrial as to these latter counts.

2

indicates the jury found defendant guilty of Count Seven and must be corrected to reflect the jury's actual verdict of not guilty as to that count.

We agree there is insufficient evidence to support defendant's conviction in Count Twelve for possession of a firearm by a convicted felon and reverse the judgment as to this conviction. Defendant's assertions of sentencing error fail. The trial court did not abuse its discretion by declining to strike defendant's prior strike conviction under *Romero* or by imposing consecutive sentences on Counts Two and Three. The minute order does, however, incorrectly reflect a conviction as to Count Seven that we order corrected. In all other respects, we affirm the judgment.

FACTS

In February 2011, Carlrissiane Dennis and Tyrone Hederington lived in adjacent upstairs apartments near the North Highlands area of Sacramento. At around 9:00 p.m., Dennis and Hederington were "hanging out" on the patio in front of their apartments with another man, Hakeem Blake. The three men were drinking beer while listening to music and "rapping freestyle." Defendant, who was friendly with Hederington, arrived at some point and joined the three on the patio. Tension quickly developed between defendant and Blake. Dennis, Hederington, and Blake decided to walk to a nearby store to pick up a bottle of brandy. Defendant went somewhere else while they did so, but came back shortly after they returned with the bottle. After the men took a few shots of brandy, the tension between defendant and Blake resumed, confrontational words were exchanged, and Dennis told defendant to leave. Defendant did not leave. Instead, he and Blake began to "push and shove" each other, which turned into a wrestling match and fist fight. Hederington broke up the fight. Dennis again told defendant to leave, which led to another fist fight, this time between defendant and Dennis. Hederington broke up this fight as well and escorted defendant down the stairs. Defendant and Dennis then exchanged heated words as defendant stood at the bottom of the stairs, which culminated

3

in Dennis telling defendant he was "acting like a bitch." Defendant said, "okay" and left. Hederington then rejoined Dennis and Blake on the patio.

Defendant returned a few minutes later and shouted something up the stairs. Dennis again told defendant to leave and again said he was "acting like a bitch." Defendant responded, "call me a bitch again." Dennis repeated, "you're acting like a bitch." Defendant then pulled a handgun from his waistband and fired two shots up the stairs before leaving the scene. Seeing the muzzle flash from the first shot, Dennis dove into the open door of Hederington's apartment. Hederington and Blake followed him inside. Hederington's wife and children were home at the time. Dennis's children and sister were also home, inside Dennis's apartment, when the shots were fired. One of the bullets lodged in the wall next to Dennis's front door. Fortunately, no one was hit by either bullet.

Defendant was arrested the following month. He was living with a friend, Adam Zeissler, in the same apartment complex and kept a handgun concealed in a pair of boots in a closet. Following defendant's arrest, Zeissler consented to a search of the apartment and revealed the location of the gun.

Based on the shooting incident, defendant was convicted of three counts of assault with a firearm, with three personal use of a firearm enhancement allegations found true (Counts One through Three), one count of discharging a firearm in a grossly negligent manner (Count Four), and one count of possession of a firearm by a convicted felon (Count Eight). He was convicted of a second count of possession of a firearm by a convicted felon (Count Twelve) based on his possession of the same firearm the day he was arrested.

4

DISCUSSION

# I

### *Sufficiency of the Evidence to Support Count Twelve*

Defendant contends his conviction in Count Twelve for possession of a firearm by a convicted felon must be reversed because, while he possessed a firearm on the date he used it to assault three people and also possessed that same firearm the following month when he was arrested, his continuous possession of the same firearm over a single period of time constituted only one violation of former section 12021.  The Attorney General concedes the point.  We accept the concession and reverse defendant's conviction in Count Twelve.

Former section 12021, subdivision (a)(1), provided in relevant part:  "Any person who has been convicted of a felony . . . and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." (See *People v. Mason* (2014) 232 Cal.App.4th 355, 365 (*Mason*); see also § 29800 [continuing former section 12021 without substantive change] Stats. 2010, ch. 711, § 6.) The purpose of this prohibition "is to protect the public by denying firearms to felons, who are considered more likely to commit crimes with them." (*People v. Correa* (2012) 54 Cal.4th 331, 344.)

In *Mason*, *supra*, 232 Cal.App.4th 355, the defendant was convicted of four counts of violating former section 12021.  He was proven to have possessed the same firearm on four separate dates, corresponding to the dates of three shootings and the date the firearm was recovered after he dropped it while fleeing from police.  (*Id*. at pp. 363-364.)  The Court of Appeal reversed three of the four convictions because "there was no evidence that Mason's possession of the firearm was anything but continuous over the period encompassing the four dates." (*Id*. at p. 366.)  The court explained:  "The Supreme Court has recognized that possession of a firearm by a felon is a continuing offense. [Citations.]  . . .  [¶] 'In the case of continuing offenses, only one violation occurs even

5

though the proscribed conduct may extend over [an] indefinite period.' [Citations.] Thus, our Supreme Court recognized more than 70 years ago that the Deadly Weapons Act, from which former section 12021 is derived, 'does not provide that it is an offense for each day that the ex-convict is in possession of the weapon. . . .' " (*Id.* at p. 365, quoting *People v. Warren* (1940) 16 Cal.2d 103, 112; see also *Wright v. Superior Court* (1997) 15 Cal.4th 521, 525, fn. 1.)

Here, too, defendant was convicted of multiple counts of violating former section 12021 based on his possession of the same firearm on separate dates. As in *Mason, supra*, 232 Cal.App.4th 355 there is no evidence in the record establishing his possession of the firearm was anything but continuous between the time he used it to assault the three men on the patio and the time it was recovered from Zeissler's apartment. We must therefore, as the Attorney General concedes, reverse one of these convictions.

## II

### *Denial of Defendant's Motion to Strike His Prior Conviction*

Defendant claims the trial court abused its discretion by declining to strike his prior strike conviction under *Romero*. We disagree.

Section 1385, subdivision (a), provides that a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." In *Romero*, our Supreme Court held a trial court may utilize section 1385, subdivision (a), to strike or vacate a prior strike conviction for purposes of sentencing under the three strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero*, *supra*, 13 Cal.4th at p. 504.) Similarly, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

6

"'[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he [or she] actually fell outside the Three Strikes scheme.'"  [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 377.)  "[T]he court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  Thus, the three strikes law "creates a *strong presumption* that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony, supra*, 33 Cal.4th at p. 378.)  This presumption will be rebutted only in an "extraordinary case—where the relevant factors described in *Williams, supra*, 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ." (*Ibid.*)

Here, the trial court indicated it "received and considered" defendant's *Romero* motion, invited defense counsel to offer additional argument on the motion, and when further argument was declined, ruled as follows:  "Having presided over this trial, as well as having reviewed the convictions that are certainly attributable to [defendant], the Court declines to exercise its discretion to strike the prior conviction.  The Court finds that defendant falls within the provisions of allowing that conviction to stand to enhance the sentence in this case."  While the trial court did not discuss each of the *Williams* factors in ruling on the motion, we must presume the trial court considered all of the relevant

7

factors in the absence of an affirmative showing to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Defendant's present felony offenses for assault with a firearm, during the commission of which defendant personally used a firearm, are serious and violent offenses. (See §§ 1192.7, subd. (c)(8), 667.5, subd. (c)(8).) Defendant's prior strike offense was a 1991 attempted robbery in which he pointed a shotgun at the victim and threatened to "blow [his] head off," also a serious and violent offense. With respect to defendant's background, character, and prospects, we note that prior to the strike offense, he has juvenile adjudications in 1988 for theft by taking, and in 1990 for driving under the influence. After the strike offense, which was committed in Maryland, and for which defendant was granted probation, he violated the probation terms by possessing a controlled substance with intent to distribute. Between the prior strike offense and 2008, defendant was convicted in Georgia of four misdemeanor counts of driving under the influence, one misdemeanor count of cruelty to animals, and one felony count of cruelty to children. Finally, between 2010 and 2011, defendant was convicted in Florida of two felony counts involving forgery and fraud. Thus, including the present offenses, defendant's criminal behavior spans over two decades and includes crimes committed in four states. Far from being outside the spirit of the three strikes law, defendant is precisely the type of career offender for whom the law was written.

Nevertheless, defendant argues the trial court abused its discretion in declining to strike his prior strike conviction, relying primarily on *People v. Bishop* (1997) 56 Cal.App.4th 1245 (*Bishop*). Such reliance is misplaced. The defendant in *Bishop* was convicted of petty theft with a prior theft-related conviction and was found to have been convicted of three prior strike convictions. He also had several convictions between the strike offenses and the current offense. The trial court dismissed two of the strikes and sentenced defendant to serve 12 years in state prison as a one-strike offender. The trial court noted the strikes were remote in time (17 to 20 years old), the current offense was

8

nonviolent, and the penalty of 12 years would keep the defendant in prison for a significant period of time. (*Id.* at pp. 1248-1249.) The Court of Appeal affirmed, commenting: "Bishop is not a worthy member of society. . . . While the People and perhaps even this court may be of the opinion that Bishop appears undeserving of leniency, the paramount consideration is not what the prosecution, defense or appellate court might conclude. Rather, what counts is what the trial court in this case concluded, as expressed by the reasons it stated under section 1385, subdivision (a). On this record, we cannot say that the trial court's decision to dismiss two of Bishop's strikes in furtherance of justice constituted an abuse of discretion." (*Id.* at p. 1251.)

This case is not *Bishop*. First, unlike *Bishop*, defendant's present offenses are both serious and violent felony offenses. While defendant attempts to mitigate the seriousness of these crimes by noting "no one was hurt," this fortuitous circumstance does not render defendant's crimes remotely comparable to the petty theft at issue in *Bishop*. Defendant fired two shots at three men standing on a patio in front of two apartments. He did so because one of the men called him a "bitch." Anyone on that patio could have been killed. Children were also present inside each of the apartments. Defendant's actions placed their lives in danger as well. Second, while we accept defendant's remaining arguments, i.e., his prior strike offense was committed over 20 years ago when he was a young man of 18 years, he was granted probation for the strike offense, his childhood was "extremely dysfunctional," including physical abuse suffered at the hands of his father, and he "has a speech impediment and reduced cognitive mental skills," we cannot conclude the trial court abused its discretion by declining to strike defendant's prior strike conviction for these reasons. Finally, defendant ignores the different posture in which *Bishop* was decided. There, the Court of Appeal concluded the trial court *did not abuse its discretion* by striking two of the defendant's prior strike convictions despite the appellate court's conclusion he was "not a worthy member of society" and was perhaps "undeserving of leniency." (*Bishop*, *supra*, 56 Cal.App.4th at p. 1251.) But it would be

9

another matter entirely to conclude, as defendant asks us to do, the trial court in this case *abused its discretion* by declining to strike his prior strike conviction, especially since defendant appears to be less deserving of leniency than the defendant in *Bishop*.

We conclude the trial court did not abuse its discretion by declining to strike defendant's prior strike conviction under *Romero, supra,* 13 Cal.4th 497.

### III

### *Decision to Impose Consecutive Sentences on Counts Two and Three*

Defendant also asserts the trial court abused its discretion by imposing consecutive sentences on Counts Two and Three based on there being multiple victims because "there was only one short outburst of violence" and "there is no evidence that the gun was ever pointed at [Hederington] or [Blake]." He is mistaken.

"Section 669 grants the trial court broad discretion to impose consecutive sentences when a person is convicted of two or more crimes." (*People v. Shaw* (2004) 122 Cal.App.4th 453, 458; see also Cal. Rules of Court, rule 4.425.[3]) "Only a single aggravating factor is required to impose . . . a consecutive sentence." (*People v. Osband* (1996) 13 Cal.4th 622, 728-729.)

---

**3** This rule provides: "Criteria affecting the decision to impose consecutive rather than concurrent sentences include: [¶] **(a) Criteria relating to crimes** [¶] Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. [¶] **(b) Other criteria and limitations** [¶] Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's prison sentence; and [¶] (3) A fact that is an element of the crime may not be used to impose consecutive sentences." (Cal. Rules of Court, rule 4.425.)

In *People v. Leon* (2010) 181 Cal.App.4th 452, 468, the Court of Appeal affirmed the defendant's convictions of one count of first degree murder and one count of attempted murder based on his act of firing a single shot into the back of a car containing both victims, the murder victim being seated directly behind the attempted murder victim, and further affirmed the trial court's imposition of consecutive sentences on the two counts. With respect to consecutive sentences, the court explained: "A trial court has discretion to impose consecutive sentences where, as here, a single act has resulted in crimes against multiple victims. For example, in *People v. Valenzuela* (1995) 40 Cal.App.4th 358, the appellate court upheld the imposition of consecutive sentences on two counts of gross vehicular manslaughter. Both counts were based on the defendant's single act of driving a motor vehicle while intoxicated and entering an intersection against a red light. The two victims were killed when appellant broadsided the vehicle in which they had been traveling. The court reasoned: '[Defendant's] drunk driving resulted in the death of two people, not just one. The trial court should have the discretion to make [defendant] "pay" for both deaths.' [Citation.] [¶] Like the trial court in *Valenzuela*, the trial court here also did not abuse its discretion in imposing consecutive sentences even though the murder and attempted murder convictions were based on appellant's single act of firing his revolver at the Camry." (*Leon*, *supra*, 181 Cal.App.4th at p. 468.)

Here, defendant does not dispute his actions in firing two shots at the men on the patio rendered him criminally liable for three assaults with a firearm. Thus, even assuming firing these two shots amounted to a single act, as in *Leon*, this single act of violence resulted in crimes committed against multiple victims. This aggravating factor alone justifies the trial court's decision to impose consecutive sentences.

Nor does it matter there is no evidence defendant was aiming specifically at Hederington or Blake because "assault does not require a specific intent to cause injury," but "only requires an intentional act and actual knowledge of those facts sufficient to

11

establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.) "Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm. . . . The evidence must only demonstrate that the defendant willfully or purposefully attempted a 'violent injury' or 'the least touching,' i.e., 'any wrongful act committed by means of physical force against the person of another.' [Citation.] In other words, '[t]he use of the described force is what counts, not the intent with which same is employed.' [Citation.] Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state. [Citations.]" (*People v. Colantuono* (1994) 7 Cal.4th 206, 214-215.) Again, defendant does not claim on appeal his violent conduct did not render him liable for three assaults with a firearm. Because there were three separate victims, the trial court did not abuse its discretion in imposing consecutive sentences.

## IV

### *Correction of the Minute Order*

Finally, as the Attorney General concedes, the minute order incorrectly indicates the jury found defendant guilty of Count Seven and must be corrected to reflect the jury's actual verdict of not guilty as to that count. (See, e.g., *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We order the correction.

## DISPOSITION

The judgment is reversed with respect to Count Twelve and the trial court is directed to dismiss this count, prepare an amended abstract of judgment so stating, and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed. The trial

12

court is further directed to issue a corrected minute order reflecting the jury's verdict of not guilty as to Count Seven.

/s/
HOCH, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
MURRAY, J.