Filed 5/9/23

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NEIL THOMAS HILLER,<br><br>    Defendant and Appellant. | A165126<br><br>(Del Norte County<br>Super. Ct. No. CRF21-9160) |

A jury convicted defendant Neil Thomas Hiller of second degree murder and being a felon in possession of a firearm. The trial court found true a number of enhancement allegations, including that defendant had suffered convictions in the State of Washington for serious or violent felonies, specifically robbery. On appeal, defendant contends that his earlier convictions in Washington State do not qualify as serious or violent felonies under California law; that the trial court erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter; that some of his enhancements should have been dismissed or stricken; and that the sentence for one of the offenses should have been stayed under Penal Code section 654.[1]

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections I and III–VII of the Discussion.

[1] All undesignated statutory references are to the Penal Code.

1

In the published portion of this opinion, we conclude that robbery under Washington law does not require, as California law does, that the defendant intends *permanently* to deprive another of personal property, and that the trial court cannot supply this missing element of permanency by construing facts recorded in a document supplying the factual basis for defendant's plea. We accordingly reverse the true findings regarding defendant's prior convictions of serious or violent felonies, vacate the sentence, and remand the matter for further proceedings. We reject all but one of defendant's other challenges to his conviction and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Killing

In the early morning hours of April 22, 2021, the Crescent City Police Department and Del Norte County Sheriff's Office received reports of a gunshot and of someone lying in a road. Officers who responded to the scene found Joseph Deford in the road. Deford briefly showed signs of life before dying. He had a gunshot wound in his back. An autopsy revealed that the bullet course was from back to front, slightly upward, and passed through his heart, consistent with a path that would be expected if someone was running away, leaning forward slightly.

### II. Defendant's Statements

In a surreptitiously taken recording, defendant acknowledged that he killed Deford with a .22 caliber revolver. A .22 caliber bullet was found in the residence where defendant was arrested.

Interviewed by a detective after his arrest, defendant admitted killing Deford. He said he had taken four grams of methamphetamine and was high. He went on, "I stopped, said, 'What's up?' I said, 'What's up, fool?' He saw who it was, he ran, and I fired. That was it. I didn't mean to hit him. I

2

didn't mean it. And we just took off." Hiller said he and Deford had "issues" in the past and that Deford ran away because he thought Hiller was going to rob him. Hiller said he fired in the air and that he wanted to scare Deford. He had a .22 revolver in his waistband. He said that would not have pulled the gun out of his waistband if he had not been high and that he killed Deford for no reason, but that he did not intend to kill Deford when he pulled out his gun. He described the killing as an accident, saying the shot was supposed to go over Deford's head. When he realized he had shot Deford, he and his companion "took off." Afterward, he disposed of the gun in the ocean, and it was never recovered.

## III.  Procedural History

Defendant was charged with murder (§ 187, subd. (a); count 1) and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2). As to count 1, the information alleged multiple firearm enhancements (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c), & (d)) and three prior serious or violent felony convictions in the State of Washington (§ 1170.12, subd. (c)(2)), two of which were separately alleged as serious felonies (§ 667, subd. (a)(1)). For count 2, the information alleged enhancements for being armed with and using a firearm (§§ 12022, subd. (a)(1), 12022.5, subd. (a)), and the same three prior convictions. The jury convicted defendant on both counts; it also found all the firearm enhancement allegations true, except that use of a firearm (§ 12022.5, subd. (a)) on count 1 appears not to have been submitted to the jury. In a bifurcated proceeding, the trial court found true the prior conviction allegations.

Defendant moved for the trial court to exercise its discretion to strike his "strike" priors. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.) In anticipation of such a motion and in an effort to show that defendant

lacked remorse and posed a risk to public safety, the District Attorney submitted transcripts of recordings of phone calls defendant made while in jail. In one, he told his girlfriend, "I don't cry about killing this kid. I cry that because I'm not gonna be there with you anymore." In a second, he said, "I love this life. . . . I love being a legend. I love being famous." In a third, he said he had pulled a gun on his mother in the past, and went on, "I'll shoot that bitch." In a fourth, he insulted the victim's family in vulgar terms and spoke of his dislike of having them behind him in court, "sniffl[ing] and cry[ing] and act[ing] like they're . . . sad about this kid."

On April 18, 2022, the trial court denied the *Romero* motion and sentenced defendant to state prison for a total term of 116 years to life. On count 1, the court designated an aggregate term of 80 years, calculated as 15 years to life for second degree murder, tripled under the Three Strikes law (§ 1170.12, subd. (c)(2)(i); see § 667, subds. (b)–(i)); plus an additional 25 years to life for personal and intentional discharge of a firearm, causing great bodily injury or death (§ 12022.53, subd. (d)); and two consecutive five-year enhancements for prior serious felonies (§ 667, subd. (a)(1)). On count 2, the aggregate term was 36 years, calculated as a consecutive 25 years to life for possession of a firearm by a felon under the Three Strikes law, plus two additional five-year terms for prior serious felonies (§ 667, subd. (a)(1)), and one year for being armed with a firearm (§ 12022, subd. (a)(1)).[2] Additional

---

[2] The sentencing transcript refers to section 12022.5, subdivision (a)(1) as the basis for the one-year enhancement. The parties agree that the actual basis for this enhancement (as alleged in the information) is section 12022, subdivision (a)(1), and that either the trial court misspoke or the court reporter made a clerical error in transcription. As discussed below, they also agree the enhancement was erroneously imposed. Section 12022.5, subdivision (a) is the basis for a separate 10-year enhancement, which the trial court stayed.

4

enhancements, including a 10-year enhancement for personal use of a firearm in connection with count 2 (§ 12022.5, subd. (a)), were imposed and stayed.

## DISCUSSION

### I. Lesser Included Offense

Defendant contends the trial court erred in neglecting to instruct the jury sua sponte on the lesser included offense of involuntary manslaughter.

The standards we apply to such a contention are well settled. A trial court has a sua sponte duty to instruct on a lesser included offense "if there is substantial evidence the defendant is guilty only of the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 118.) The purpose of this rule is to ensure " 'the most accurate possible verdict encompassed by the charge and supported by the evidence.' [Citation.] In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense." (*People v. Shockley* (2013) 58 Cal.4th 400, 403–404.) The substantial evidence standard "is not satisfied by ' "*any* evidence . . . no matter how weak," ' but rather by evidence from which a jury composed of reasonable persons could conclude 'that the lesser offense, but not the greater, was committed.' " (*People v. Avila* (2009) 46 Cal.4th 680, 705.) We review this claim de novo. (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

Manslaughter is "the unlawful killing of a human being without malice." (§ 192.) Involuntary manslaughter is an unlawful killing "in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) Case

5

law has construed involuntary manslaughter to include "an unlawful killing in the course of an inherently dangerous assaultive felony without malice." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 33–34 (*Brothers*).) Involuntary manslaughter is ordinarily a lesser included offense of murder. (*People v. Ochoa* (1998) 19 Cal.4th 353, 422.)

Malice is implied when a killing "resulted from an intentional act, the natural consequences of which are dangerous to human life, performed with knowledge of and conscious disregard for the danger to human life." (*People v. Thomas* (2012) 53 Cal.4th 771, 814.) For instance, malice may be implied where a defendant brandishes a weapon and unintentionally shoots, if the jury concludes the act was dangerous to human life and the defendant acted in conscious disregard for life, or where a person points a loaded gun at a victim and threatens to shoot. (*Id.* at pp. 814–815.)

Defendant contends his statement to police that he intended only to shoot in the air and scare Deford would support a finding that he did not act with implied malice, that is, with a conscious disregard for human life. We disagree. There can be no doubt that the natural consequences of the act of shooting a loaded gun toward a person are dangerous to human life. And, even crediting defendant's statement that he sought only to frighten Deford and wanted the bullet to pass over him, there is no evidence that would reasonably support a finding he did not subjectively realize the danger posed by shooting in Deford's direction. Because there was no substantial evidence defendant acted without malice, the trial court was not obligated to instruct the jury sua sponte on involuntary manslaughter. (See *Brothers*, *supra*, 236 Cal.App.4th at p. 35.)

## II. Prior Felonies in Washington State

Defendant contends the evidence does not support the trial court's finding that his prior convictions in the State of Washington qualified as serious or violent felonies under California law for purposes of sentencing him under the Three Strikes law and imposing two five-year enhancements under section 667, subdivision (a).  He bases this argument on the contention, conceded by the Attorney General, that the elements of the offense of robbery in Washington are broader than those of the same offense in California.  Robbery in California is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211.)  Importantly, California law requires an intent to deprive the victim of property permanently.  (*People v. Bacon* (2010) 50 Cal.4th 1082, 1117.)

This is the element lacking in Washington's definition of robbery.  The applicable Washington statute defines robbery as being committed when one "unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone."  (Wn. Rev. Code § 9A.56.190.)[3]  An implied element of robbery is the intent to commit theft (*State v. Kjorsvik* (1991) 117 Wn.2d 93, 98), but Washington law does not include an intent to deprive the victim of property *permanently* as an element of theft or, by extension, of robbery.[4]  (*State v. Komok* (1989) 113 Wn.2d 810, 816–817

---

[3] The statute was amended to make it gender-neutral in 2011.  (2011 Wn. Sess. Laws 2299.)

[4] The Attorney General points to one decision of a Washington appellate court, *State v. Ralph* (2013) 175 Wn.App. 814, 824, that states the

7

[theft]; *State v. Milojevich* (Wn.Ct.App. Mar. 9, 2009, No. 61707-9-1) 2009 Wash.App. Lexis 571, p. *5;[5] *State v. Martinez* (Wn.Ct.App. Aug. 13, 2012, No. 65950-2-1) 2012 Wash.App. Lexis 1917, p. *12 & fn. 36 [citing *Komok*, "[i]ntent to permanently deprive is not an element of the crime of robbery"]; see also *People v. Riel* (2000) 22 Cal.4th 1153, 1205–1206 [*Komok* interprets theft statute as no longer requiring permanent deprivation].)  As a result, one may be convicted of robbery in Washington for conduct that would not be robbery under California law, and, defendant contends, for his prior convictions there was neither a finding beyond a reasonable doubt nor an admission that his conduct satisfied all elements of the crime of robbery in California.  (See *People v. Gallardo* (2017) 4 Cal.5th 120, 136 (*Gallardo*).)  As we shall explain, this point is well taken.

### A. Additional Procedural Background

#### 1. Washington Offenses

In pleading guilty in 2008 to two counts of robbery in Washington, defendant stated he did not believe he was guilty, but he agreed there was a

---

crime of robbery includes the nonstatutory element of the specific intent to steal, which in turn is the equivalent of the specific intent to deprive the victim of property permanently.  But the Attorney General acknowledges that this statement of the appellate court appears to be based on a misreading of two cases of the Washington Supreme Court, *State v. Sublett* (2012) 176 Wn.2d 58, 88, and *In re Pers. Restraint of Lavery* (2005) 154 Wn.2d 249, 255, both of which held the crime of robbery in Washington includes the nonstatutory element of a specific intent to steal, but neither of which said the intent to deprive the victim of possession permanently was an element of the offense.

[5] Courts in other states may cite unpublished decisions of Washington courts, although such decisions have no precedential value.  (Wn. R. Gen. Application 14.1(a) & (b).)

8

substantial likelihood of conviction and wished to take advantage of a plea offer.[6] In pleading guilty in 2013 to another robbery in Washington, defendant said he entered the plea in order to take advantage of plea negotiations, and he acknowledged there were sufficient facts for a substantial likelihood of conviction if he proceeded to trial. In connection with all three offenses, he agreed the court could review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea.

As to the two 2008 convictions, the declaration of probable cause said that defendant and two other people confronted two teenagers and demanded their bicycles, the contents of their pockets, and the gloves one of the victims was wearing. Defendant took the gloves. Throughout the event, defendant had his hand in his pocket and made a clicking sound, as if he had a gun. He told the victims to cooperate or he would have to " 'take this out and use it.' " Officers found the three perpetrators nearby and detained them, the victims' property still in their possession. Defendant told police one of the victims had been insulting him, which prompted him to ask for the gloves; he said that victim handed them over voluntarily and did not ask for them back. For the 2013 conviction, the declaration of probable cause explained that defendant was confronted by a loss prevention officer after shoplifting items from a Safeway store. He pulled out a knife and tried to stab the officer then

---

[6] The plea form stated "*Alford/Newton* Plea," a reference to *North Carolina v. Alford* (1970) 400 U.S. 25, which holds that a defendant may take advantage of a plea agreement without admitting guilt, and *State v. Newton* (1976) 87 Wn.2d 363, 370–371 (*Newton*), which allows such a procedure under Washington law if a factual basis for the plea can nonetheless be established.

fled on foot, again trying to stab the officer chasing him, until deputies caught and arrested him.

*ii.    Findings in Current Case*

The trial court found true the allegations that defendant had been convicted of three serious or violent felonies in Washington.  These offenses were used to treat his current offenses as third strikes (§§ 667, subds. (b)–(j), 1170.12) and to impose two five-year enhancements under section 667, subdivision (a)(1).  The Three Strikes law applies if a defendant has suffered a conviction of an offense in another jurisdiction that includes all the elements of a serious or violent felony in California.  (§§ 667, subds. (a)(1), (d)(2), 1170.12, subd. (b)(2).)  The section 667, subdivision (a)(1) enhancements apply if a conviction in another jurisdiction includes all the elements of any serious felony.

## B. Forfeiture

As a threshold matter, the Attorney General contends defendant forfeited his challenge by failing to raise his constitutional objection to the trial court's consideration of his records of conviction to determine whether the Washington priors were serious or violent felonies.  He is correct that, "as a general rule, 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal,' " and that this rule applies to claims of violations of constitutional rights.  (*In re Seaton* (2004) 34 Cal.4th 193, 198.)  Defendant argues that if the claim is forfeited, his counsel provided ineffective assistance in failing to raise it.

During the hearing on the prior convictions, defendant argued that the People's evidence did not show that the conduct underlying his robbery convictions in Washington also qualified as robbery in California.  He did not, however, raise the issue again at the sentencing hearing or show that the

10

offense of robbery in Washington lacked an element necessary for robbery under California law, and he did not couch his argument in terms of the Sixth Amendment or the rule of *Gallardo*, which we discuss in detail below.

We will not treat defendant's claim as forfeited. First, he frames his argument as a challenge to the sufficiency of the evidence to support the findings that the Washington robberies were serious or violent felonies. Not only did defendant raise this contention at least once in the trial court, but a challenge to the sufficiency of the evidence is generally not subject to forfeiture. (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 129.) As our Supreme Court explains, a defendant cannot forfeit "his right to challenge the sufficiency of the evidence on which [a strike] allegation was found true until it *was* found true and, then, only by failing to file a timely notice of appeal." (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262.) In any event, we have discretion to reach forfeited claims. (*People v. Smith* (2003) 31 Cal.4th 1207, 1215 [appellate court has discretion from reaching forfeited claims]; *People v. Williams* (1998) 17 Cal.4th 148, 162–162, fn. 6.) To the extent defendant did not preserve the precise constitutional claims he raises here, in the interest of justice we exercise our discretion to consider them nevertheless. We therefore need not address defendant's contention that his counsel rendered ineffective assistance in failing to make the argument below that he now makes on appeal.

### C. Analysis

The People must prove every element of a sentence enhancement beyond a reasonable doubt. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) This includes the duty to prove the prior conviction is a serious or violent felony. (*People v. Frierson* (2017) 4 Cal.5th 225, 233 (*Frierson*).) Where the prior conviction is based on a guilty plea, the prosecution must prove the

11

defendant admitted all elements of the California offense. (*People v. Strike* (2020) 45 Cal.App.5th 143, 150 (*Strike*).) If the mere fact of a conviction does not prove the offense was a qualifying felony, admissible evidence from the record of conviction, including certified documents from the prior proceeding, may be examined to resolve the issue. (*Miles*, at p. 1082.)

This inquiry is constrained by the protections of the Sixth Amendment, an issue explored at length by our high court in *Gallardo*. The defendant in *Gallardo*, like defendant here, had, based on a guilty plea, suffered a prior conviction whose definition was broader than the definition of a " 'serious felony.' " (*Gallardo*, *supra*, 4 Cal.5th at pp. 123, 136.) Specifically, the prior conviction was for assault with a deadly weapon or with force likely to produce great bodily injury, a conviction that would qualify as a serious felony only if it were committed with a deadly weapon. (*Id*. at p. 136; former § 245, subd. (a); § 1192.7, subd. (c)(31).)

The question in *Gallardo* was whether the trial court acted properly in reviewing the transcript of the preliminary hearing in the assault case to determine that the defendant used a deadly weapon in committing the assault. (*Gallardo*, *supra*, 4 Cal.5th at p. 123.) The transcript showed that the victim testified that the defendant had tried to frighten her with a knife, pushed her, and punched her. (*Id*. at p. 126.)

Our high court noted that in an earlier case it had held that the Sixth Amendment permits courts to review the record of a prior conviction to determine whether it is a serious felony for purposes of sentencing laws, but that the inquiry is a " 'limited one' that 'focus[es] on the elements of the offense of which the defendant was convicted.' " (*Id*. at p. 124, citing *People v. McGee* (2006) 38 Cal.4th 682, 706.) According to the court in *McGee*, in carrying out this inquiry the trial court could properly review the record to

determine whether "the conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*McGee*, at p. 706.) In *Gallardo*, the court reconsidered this holding and disapproved *McGee* to the extent the case suggested it is constitutionally permissible for the sentencing court to find a disputed fact about the conduct underlying the earlier conviction that was not established by virtue of the conviction itself. (*Gallardo*, *supra*, 4 Cal.5th at p. 125.)

*Gallardo*'s reasoning and holding are based on cases from the United States Supreme Court applying this rule: " 'The Sixth Amendment contemplates that a jury—not a sentencing court—will find' the facts giving rise to a conviction, when those facts lead to the imposition of additional punishment under a recidivist sentencing scheme." (*Gallardo*, *supra*, 4 Cal.5th at p. 134, quoting *Descamps v. United States* (2013) 570 U.S. 254, 269 (*Descamps*).) In *Descamps*, the Supreme Court explained that there are two permissible approaches to determining whether a prior offense qualifies to enhance a sentence under a federal statute, the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). One is the " 'categorical approach,' " which compares the elements of the statute forming the basis of the prior defendant's conviction with the elements of the generic crime that serves as the basis for the enhancement. (*Descamps*, at p. 257.) The prior conviction may be used to enhance the current sentence only if its elements "are the same as, or narrower than, those of the generic offense." (*Ibid.*) The other approach, the " 'modified categorical approach,' " may be used when the prior conviction is for a " 'divisible statute,' " which "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." (*Ibid.*, italics omitted.) In that case, the sentencing court may "consult a limited class of documents, such as

13

indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction," before "compar[ing] the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." (*Ibid*.) Where, on the other hand, the prior conviction was under an " 'indivisible' statute—i.e., one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense," use of the modified categorical approach is impermissible. (*Id*. at p. 258.) That is, the sentencing court may not properly "decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy [the] categorical test." (*Descamps*, at p. 258.)

Although *Descamps* was interpretating a federal statute, the Supreme Court explained that the categorical approach is underpinned by the Sixth Amendment, which "contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances." (*Descamps*, *supra*, 570 U.S. at pp. 269–270.) The court went on to state that similarly, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." (*Id*. at p. 270, citing *Shepard v. United States* (2005) 544 U.S. 13, 24–26.)

Three years later, in *Mathis v. United States* (2016) 579 U.S. 500, 503, the Supreme Court reprised this theme. It explained that a sentencing court "can do no more, consistent with the Sixth Amendment, than determine what

14

crime, with what elements, the defendant was convicted of." (*Id*. at pp. 511–512.) The court may not make "a disputed determination about 'what the defendant and [prior] judge must have understood as the factual basis of the prior plea.'" (*Id.* at p. 511.)

The court in *Gallardo* reviewed these authorities, acknowledging that they were decided on statutory grounds but explaining that the Supreme Court's interpretation of the statute in question "was informed by an understanding of certain basic, background Sixth Amendment principles, and the court's explication of those principles was both considered and unequivocal:  The jury trial right is violated when a court adds extra punishment based on factfinding that goes 'beyond merely identifying a prior conviction' by 'try[ing] to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.'" (*Gallardo*, *supra*, 4 Cal.5th at pp. 134–135.)  These principles apply to California adjudications as well, although California courts are concededly not "constitutionally compelled to emulate the [United States Supreme Court's] version of the categorical approach in all of its particulars." (*Id*. at p. 135.)  Under these principles, when an enhancement relies on a finding regarding the defendant's conduct, but the jury did not make that finding and the defendant did not admit that fact, the defendant's Sixth Amendment rights are violated.  (*Ibid*.)

Applying these principles, our high court held that "a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts of conduct 'realistically' supported the conviction. . . .  The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction

15

itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Gallardo, supra,* 4 Cal.5th at p. 136.) Based on this rule, the trial court in *Gallardo* erred in relying on the preliminary hearing transcript to determine the basis of the defendant's prior conviction. (*Id.* at p.137.) The defendant there did not specify that she used a deadly weapon when entering her guilty plea, nothing in the record showed she adopted the preliminary hearing testimony as supplying the factual basis for her plea, and the sentencing court could know neither whether a jury would have credited the victim's testimony nor whether by pleading guilty the defendant acknowledged the truth of the testimony that she used a knife. (*Id.* at p. 136.) The court therefore remanded the matter to permit the trial court to determine what facts the defendant admitted in entering her plea under the correct standards. (*Id.* at pp. 137–140.)

Following *Gallardo*, the court in *Strike, supra,* 45 Cal.App.5th at pages 152–153, concluded that a defendant's guilty plea to participation in a street gang (§ 186.22) did not mean that he admitted to the factual allegations contained in the charging document, which included factual allegations beyond those then required for commission of the offense. (See *People v. Hudson* (2018) 28 Cal.App.5th 196, 203, 208–209 [although information stated pipe was used as deadly weapon and there was evidence of it in the preliminary hearing transcript, record was silent on whether defendant pled to assault based on great bodily injury, use of deadly weapon, or both].)

Defendant argues that *Gallardo* should be read restrictively, in conjunction with *Decamps*, to allow a sentencing court to consider only the elements of the prior offense, and to prohibit consideration of any additional

16

facts a defendant might have admitted in entering a guilty plea. This argument founders on *Gallardo*, which indicates that the admissions a defendant made in entering a guilty plea may also properly be used in considering the effect of a prior conviction (*Gallardo*, *supra*, 4 Cal.5th at pp. 137–140; see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [we are bound by high court's rulings]).

Alternatively, defendant argues that, even if the court may look to facts admitted during the plea, the evidence does not show his Washington robberies are serious or violent felonies in California. This argument fares better. Defendant admitted the elements of the Washington robberies through his guilty pleas, but the record before us does not contain any direct admissions of additional facts that would make the robberies serious or violent felonies in California.

The Attorney General argues that the declarations of probable cause, which defendant agreed the trial court could review to establish a factual basis for his plea, show unambiguously that defendant intended to deprive his victims of their property permanently, and the trial court could therefore treat the Washington convictions as serious or violent felonies for purposes of California law. The Attorney General points to language in *Gallardo* where, in concluding the trial court could not properly look to the preliminary hearing transcript to determine that a prior offense was a strike, the high court noted that "[n]othing in the record shows that defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) In contrast, defendant here

adopted the statements of probable cause for the factual basis and is bound by their contents, the Attorney General argues. We are not persuaded.

Under Washington law, the requirement of a factual basis means not that the trial court must be convinced of the defendant's guilt beyond a reasonable doubt, but only that there must be a prima facie case—enough evidence for a jury to conclude a defendant is guilty. (*Newton, supra*, 87 Wn.2d at pp. 369–370.) And if a defendant wishes to plead guilty while refusing to admit guilt, the trial court may accept the plea if a factual basis can nevertheless be established through other evidence, such as witness affidavits or the prosecutor's statement. (*Id*. at pp. 370–371; see *In re Pers. Restraint of Cross* (2013) 178 Wn.2d 519, 525–526.) Although defendant admitted the elements of the offense in pleading guilty to it and agreed the court could look to the declarations of probable cause to find a factual basis, there is no indication in this record that he admitted the truth of any statements in the declarations of probable cause.

Courts have consistently differentiated between an admission that a document or recitation contains a factual basis for a plea and an admission that statements in that document or recitation are true. (See *People v. Saez* (2015) 237 Cal.App.4th 1177, 1194–1195, 1206–1208 [by pleading guilty the defendant admitted elements of crime, but stipulating to the complaint as factual basis did not constitute admission to additional facts in complaint]; *People v. French* (2008) 43 Cal.4th 36, 51 [defense counsel's statement that witnesses would testify consistent with prosecutor's recitation of factual basis was not stipulation that recitation was correct]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 235 [stipulation to grand jury transcript as factual basis is not admission of truth of evidence in the transcript]; see also *People v. Flores* (2022) 76 Cal.App.5th 974, 991 [defendant's stipulation that a preliminary

hearing "transcript provided a factual basis for the plea is not a ' "binding admission for all purposes" ' "].) Defendant thus did not admit facts beyond the elements of the crime of robbery in Washington, as is necessary to make the crime a serious or violent felony in California.

Moreover, our high court has cautioned that sentencing courts "may not determine the 'nature or basis' " of a prior conviction through their own "conclusions about what facts or conduct 'realistically' supported the conviction." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) Even if defendant had admitted to the factual allegations in the probable cause declarations, those allegations do not conclusively establish—although they strongly suggest—his intent to keep the property. Defendant neither admitted such an intent, nor did a jury find it beyond a reasonable doubt, and we conclude that under *Gallardo*, the sentencing court may not infer such intent in order to impose a sentencing enhancement, no matter how strongly the facts would support such an inference. Because no jury found—and nothing in this record shows defendant admitted—that he intended permanently to deprive his victims of their property, the trial court erred in treating the Washington robberies as serious or violent felonies for purposes of California law.

### D. Remedy

The question of remedy remains. In *Strike*, after concluding the defendant had not admitted to factual allegations in a charging document that were necessary to support a gang enhancement, the appellate court noted that a prior-conviction allegation may be retried when a true finding is reversed. It vacated the sentence and remanded for further proceedings in which, for instance, the prosecution might be able to provide a transcript of the plea proceedings or other documentation that could show what the defendant admitted in tendering his guilty plea. (*Strike*, *supra*, 45

19

Cal.App.5th at p. 154; see *Gallardo*, *supra*, 4 Cal.5th at p. 139 [remanding case to allow People to demonstrate, "based on the record of the prior plea proceedings, that defendant's guilty plea encompassed a relevant admission about the nature of her crime"]; *People v. Barragan* (2004) 32 Cal.4th 236, 239 [retrial of strike allegation permissible when appellate court reverses finding for insufficient evidence].)  The same is appropriate here.  We shall remand the matter for a new hearing on the prior convictions and resentencing, at which the People may present evidence of any admissions made by defendant when he entered his guilty pleas.

The remainder of defendant's challenges are to sentencing decisions the trial court made.  Although we do not know whether the court will again find the Washington robberies qualify as serious or violent felonies under California law, and we cannot know how the court will exercise its discretion in resentencing, we briefly consider these challenges for the guidance of the trial court on remand.

## III.   Mitigating Factors Under Section 1385

Defendant contends section 1385 required the trial court to dismiss the enhancements, and that it erred in declining to do so.  This argument requires us to construe amendments to section 1385 that took effect shortly before Hiller was sentenced.[7]

As amended, section 1385 provides that unless prohibited by an initiative statute, a court "shall dismiss an enhancement if it is in the furtherance of justice to do so."  (§ 1385, subd. (c)(1).)  "In exercising its

---

[7] The amendments at issue were enacted in 2021, effective January 1, 2022, and added subdivision (c) to section 1385.  (Sen. Bill No. 81, Stats. 2021, ch. 721, § 1.)  Further amendments to the statute, enacted in 2022, do not affect the substance of the provisions at issue in this case. (Stats. 2022, ch. 58, § 15.)

20

discretion" under the amended statute, the court is directed to "consider and afford great weight" to evidence of any of several mitigating circumstances, proof of which "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

Two of the mitigating circumstances are at issue here. One exists when "[m]ultiple enhancements are alleged in a single case. *In this instance, all enhancements beyond a single enhancement shall be dismissed*." (§ 1385, subd. (c)(2)(B), italics added.) Another exists when "[t]he application of an enhancement could result in a sentence of over 20 years. *In this instance, the enhancement shall be dismissed*." (§ 1385, subd. (c)(2)(C), italics added.)

Defendant contends the italicized language means that if one of these circumstances exists, the trial court in fact has no discretion; it must dismiss the enhancement whether or not doing so would endanger public safety. We review this question of statutory interpretation de novo. (See *Walker v. Superior Court* (2021) 12 Cal.5th 177, 194.) We seek to determine the Legislature's intent, looking first to the statutory language and considering it in light of the entire substance of the statute and seeking to harmonize the various parts of an enactment. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 294 (*Mendoza*).)

Read in isolation, the unequivocal language upon which defendant relies—that the enhancements "shall be dismissed"—could lead to the result he seeks (§ 1385, subd. (c)(2)(B) & (C)), but viewing the language in light of the entire statute, defendant's construction fails. (*Mendoza, supra*, 88 Cal.App.5th at p. 294.) The court in *Mendoza* recently rejected the argument defendant makes here, and held that a court need not consider the mitigating factors in subdivision (c)(2) of section 1385, if it finds that dismissal of an

21

enhancement would endanger public safety.  (*Mendoza*, at p. 297.)  *Mendoza* looked first to the general language of section 1385, subdivision (c)(2), providing that "[i]n exercising its discretion under this subdivision" the court must consider the listed mitigating factors in determining whether to dismiss an enhancement " 'unless the court finds that dismissal of the enhancement would endanger public safety.' " (*Mendoza*, at p. 296.)  This language, the court concluded, means that "if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigated circumstances." (*Ibid*.)  Bolstering this conclusion, the court noted that if dismissal of an enhancement " 'would endanger public safety,' (§ 1385[, subd. ](c)(2)), then it is difficult to imagine the circumstances under which dismissal would be 'in the furtherance of justice,' which the court must find in order to dismiss (*id*., subd. (c)(1))." (*Mendoza*, at p. 296, fn. 4.)  Thus, *Mendoza* explained, "the statute does not appear to give the court discretion, let alone a mandatory duty, to dismiss an enhancement if doing so would endanger public safety." (*Ibid*.)

The court in *Mendoza* also explained that any other result would result in the implied repeal of other statutes.  For instance, if a court were obligated to dismiss an enhancement that would result in a sentence of more than 20 years, it would be impossible to impose a firearm enhancement under subdivision (c) or (d) of section 12022.53, which provide for firearm enhancements of 20 and 25 years.  (*Mendoza, supra*, 88 Cal.App.5th at pp. 296–297.)

Other recent cases have considered the issue and reached the same conclusion.  (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238–241, review granted Apr. 19, 2023, S278786; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21; *People v. Walker* (2022) 86 Cal.App.5th 386, 391, 396–398, review

granted March 22, 2023, S278309.)  We agree with these authorities and reject defendant's argument as well.

## IV.  Danger to Public Safety

As a second challenge to the trial court's refusal to strike the enhancements, defendant argues the trial court abused its discretion by looking to the circumstances at the time of sentencing—rather than at the time his base sentence is completed—in evaluating the danger to public safety.  Defendant was 34 years old at the time of sentencing, with approximately a year of custody credits, and his three-strikes sentence for murder and firearm possession *before enhancements* was 70 years to life.  He would thus be 103 years old when first eligible for release, if the enhancements are dismissed.  At that age, he argues, he is unlikely to pose any risk to public safety, and the parole board can deny parole if there is any continuing risk.

Defendant's argument finds strong support in *People v. Williams* (2018) 19 Cal.App.5th 1057 (*Williams*).  The defendant in *Williams* was convicted in Nevada County of grand theft (§ 487), unlawful driving or taking a vehicle (Veh. Code, § 10851), and escape, and in El Dorado County of grand theft; he admitted three strike priors (§ 667, subds. (b)–(i)), and he received a total sentence of 193 years to life.  (*Williams*, at p. 1060.)  He later sought resentencing under the Three Strikes Reform Act of 2012 (see § 1170.126), which, with certain exceptions, allows a person serving a Three Strikes sentence for a felony that is not serious or violent to petition for resentencing as a second strike offender.  (*Williams*, at pp. 1059, 1061.)  The trial court denied the motion, citing the defendant's criminal history, his disciplinary record and methamphetamine use in prison, and the fact that the current

23

crime was committed while on the run. (*Id*. at p. 1061.) The appellate court reversed and remanded the matter.

In language upon which defendant relies, *Williams* explained that "[d]etermining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. [In this inquiry] the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced. A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her 70's. This applies with even greater force to a defendant who would still be serving a sentence greater than a human lifespan even if the petition were granted. . . . If a defendant's term is still effectively life without parole after resentencing, then resentencing cannot pose an unreasonable risk to public safety." (*Williams*, *supra*, 19 Cal.App.5th at p. 1063.) Because the trial court did not determine which of the defendant's convictions were eligible for resentencing, it necessarily did not consider what effect granting the petition would have on the ultimate sentence, and thus could not carry out this forward-looking inquiry. (*Ibid*.) And, the court noted, when the defendant became eligible for parole, the Board of Parole Hearings would assess his dangerousness before granting parole. (*Id*. at pp. 1063–1064.) The matter was remanded for the trial court to determine which crimes were eligible for resentencing, and only then to determine whether resentencing posed an unreasonable risk of danger to public safety. (*Id*. at p. 1064.)

Although *Williams* involves a different statute, there are parallels between that case and this one. We acknowledge that in this case the trial court clearly considered future dangerousness, pointing out defendant's long history of crimes and explaining that "prior conduct is usually an indicator of

future conduct." Also, "you cannot get more dangerous to the public than killing someone and shooting them in the back," the court observed, and defendant's statements while in custody suggested he enjoyed his criminality. Based on these considerations, the court concluded it could not in good conscience strike the allegations under section 1385. But the court's explanation of its decision not to strike the enhancements did not address the fact that, with all enhancements stricken, defendant would first be eligible for parole at the age of 103, a circumstance that would appear highly relevant in assessing whether his release would endanger the public. (See *Williams*, *supra*, 19 Cal.App.5th at p. 1063.) Nor did the court acknowledge that defendant would remain subject to two indeterminate life terms, meaning he would only be released, even then, if the Board of Parole Hearings concluded he posed no threat to public safety. (See *id*. at p. 1062, citing *People v. Johnson* (2015) 61 Cal.4th 674, 695.)

Ultimately, we need not determine whether the trial court abused its discretion in refusing to strike the enhancements in this case, since we have already indicated defendant's sentence must be vacated. But after retrial of the prior conviction allegations, which may change the sentencing calculus, the trial court will resentence defendant. In then assessing whether defendant is entitled to have enhancements stricken under section 1385, the trial court should bear in mind the considerations articulated in *Williams*.

## V. Double Punishment for Counts 1 and 2

Defendant contends his sentence for count 2, possession of a firearm by a felon, should have been stayed under section 654 because it was based on the same act as the murder conviction. We are unpersuaded.

Section 654 prohibits multiple punishments for a single act or indivisible course of conduct. (*People v. Ramirez* (2006) 39 Cal.4th 398, 478.)

25

Whether two offenses are separate is a question of fact for the trial court, and we uphold the trial court's express or implied determination if supported by substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618; *People v. Leonard* (2014) 228 Cal.App.4th 465, 499.) We review the trial court's finding in the light most favorable to it, and we presume the existence of every fact in support of the finding that the trial court could reasonably deduce from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

The court in *Jones* applied these principles where a defendant was convicted of both shooting at an inhabited dwelling and being a felon in possession of a firearm, after he fired shots at a house from a car in which he was a passenger. (*Jones*, *supra*, 103 Cal.App.4th at pp. 1141–1142.) The court explained that where the evidence " 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense' "—for instance, when a defendant wrestles away an officer's weapon and shoots at the officer, or where there was evidence the defendant obtained the gun during a bar fight moments before a shooting—multiple punishment is improper. (*Id.* at p. 1144.) But where the evidence shows the defendant possessed the firearm before the crime, with an independent intent, multiple punishment is proper. (*Ibid.*) The court set forth the rule that "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crimes already in possession of the firearm." (*Id.* at p. 1145.)

Other cases have similarly concluded section 654 bars separate punishment only if the defendant fortuitously obtains a firearm at the moment of committing another offense. (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412; accord, *People v. Bradford* (1976) 17 Cal.3d 8, 13, 22–23 [possession of weapon taken from victim not " 'antecedent and separate' "

from use in shooting]; *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 [multiple punishment improper because evidence indicated defendant obtained possession of gun simultaneously with shooting, with only objective to shoot the victim].) The court in *Ratcliff* noted that some older cases had sustained section 654 challenges on similar facts, but disagreed with them and explained that they either failed to address the issue of prior or subsequent possession of the weapon or were the result of concessions by the People. (*Ratcliff*, at pp. 1412–1413.)

A straightforward application of the rules of *Jones* and *Ratcliff* leads to the conclusion that section 654 does not bar multiple punishment here. Defendant's own statements show that he pulled over when he saw Deford and took a gun out of his waistband and that he later disposed of the gun in the ocean. The only reasonable conclusion is that he possessed the weapon both before and after the killing, rather than coming upon it fortuitously and using it immediately to shoot Deford. As in *Jones*, it "strains reason" to assume otherwise. (*Jones*, *supra*, 103 Cal.App.4th at p. 1147.)

Defendant does not contend that *Jones* and *Ratcliff* were wrongly decided, but rather argues that a close reading of the jury instructions and findings shows that even under their reasoning, double punishment is improper. The jury found true the allegation under count 2 that he personally used a firearm (§ 12022.5, subd. (a)), and that statute applies when someone "personally uses a firearm *in the commission of* a felony or attempted felony" (*ibid.*, italics added). And the jury was instructed that to find this enhancement true, it must find defendant used the firearm in the commission of the crime. From this, defendant argues, his conviction for possessing a firearm must logically have been based *only* on his possession at

27

the time he shot Deford, not on his possession before or after that time, and the bar on multiple punishment for one act necessarily applies.

For this point, defendant relies on the principle, expressed in different contexts, that the trial court cannot make a factual finding contrary to the jury's verdict. For instance, in *People v. Bradley* (2003) 111 Cal.App.4th 765, the court concluded multiple punishment for robbery and attempted murder was unavailable. The evidence showed the defendant set up the victim to be robbed and her accomplices unexpectedly shot him; she was convicted of attempted murder based on a theory of natural and probable consequences. (*Id*. at pp. 767–768.) Because the theory upon which the prosecution proceeded required the defendant to entertain only the single objective of robbing the victim, the trial court erred in making a contrary finding that she personally had the objective also to kill him. (*Id*. at p. 770.)

In *People v. Siko* (1988) 45 Cal.3d 820, 826, our high court held that a defendant convicted of rape, sodomy, and lewd conduct with a child could be punished for only two of those offenses when the charging document and the verdict form made clear that the lewd conduct in question was the rape and sodomy, not other acts that might also have supported the lewd conduct conviction.

And in *People v. Jones* (2012) 54 Cal.4th 350, 352, the high court ruled that a defendant convicted of possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public could be punished for but one of those crimes because all three were based on a single act. The court explained that although there was evidence the defendant obtained the gun three days before it was found in his car, the record showed he was convicted of all three offenses due to his being caught with the gun on a single occasion: the

28

information alleged all three crimes were committed on the same day, and the prosecutor argued there were " 'three different counts for the same exact conduct.' " (*Id*. at p. 359.) The court thus concluded that the "defendant's guilt on all three charges was premised solely on his having the gun in his car when arrested on May 26, 2008." (*Ibid*.)

These authorities are readily distinguishable from the case before us, and they do not assist defendant. There is no inconsistency between the jury's finding, that while illegally possessing the firearm defendant used it to shoot Deford, and the court's implicit finding that defendant possessed the gun before the shooting and did not come into possession fortuitously. Defendant points out that in seeking to persuade the jury of his guilt on count 2, the prosecutor argued that the fact that defendant threw the revolver in the ocean "doesn't mean that he didn't possess a firearm when he shot and killed Joseph Deford." But the prosecutor *also* pointed out to the jury that defendant "decided . . . to carry [the gun] in his waistband," and, in any case, the theory of the prosecution was in no manner inconsistent with defendant's preexisting possession of the gun. We thus conclude substantial evidence supports the trial court's implied finding that the two offenses were separate for purposes of section 654.

## VI.    Gun Use Enhancements and Serious Felony Finding

As an alternative to his contention that section 654 bars double punishment for counts 1 and 2, defendant attacks the gun use enhancement on count 2, and with it the determination that his conviction for being a felon in possession of a firearm is a serious or violent felony that merits a three-strikes sentence.

Section 12022.5, subdivision (a) provides for an enhancement of up to 10 years for personal use of a firearm in the commission or attempted

commission of a felony. As to count 2, felon in possession of a firearm, the jury found this enhancement true. Although the sentencing court stayed the prison term it imposed for the enhancement, the jury's true finding affected defendant's sentence in two other ways. First, under the Three Strikes law a defendant who uses a firearm during an offense and who has suffered two or more prior convictions of serious or violent felonies receives an indeterminate term with a minimum of at least 25 years. (§§ 667, subds. (a)(4), (e)(2)(A), 1170.12, subds. (b)(1), (c)(2)(A); see §§ 667.5, subd. (c)(8), 1192.7, subd. (c)(8).) Second, section 667, subdivision (a)(1) provides for consecutive five-year enhancements for prior convictions of serious felonies when a person is convicted of a new serious felony. Among the qualifying serious felonies is one in which the defendant personally uses a firearm. (§ 667, subd. (a)(4), 1192.7, subd. (c)(8).) Defendant's sentence was enhanced under both of these provisions as a result of the jury's finding that he used a firearm in connection with count 2.

Defendant contends that if his conviction for firearm possession was based on his conduct *before* the murder, when he was carrying the gun around in his waistband, then logically he did not use the firearm in the commission of this felony. As a result, he argues, he should not have received an indeterminate 25-year term for count 2 under the Three Strikes law, nor the extra 10 years for two prior serious felonies.

This argument has a superficial appeal, but it misconstrues the nature of possession of a firearm by a felon. It is a continuing offense (see *People v. Warren* (1940) 16 Cal.2d 103, 112), one that is " '*complete* at the first instance the elements are met,' " i.e., when the felon first possesses the gun, but " 'nevertheless not *completed*' " as long as the possession continues. (*People v. Mason* (2014) 232 Cal.App.4th 355, 365, quoting *Wright v. Superior Court*

30

(1997) 15 Cal.4th 521, 525–526.) In such a case, there is only a single offense even if the proscribed conduct extends over an indefinite period. (*Mason*, at pp. 365–366.)

As we have explained, substantial evidence supports the trial court's implied finding that defendant possessed the firearm before, and separate from, his action in shooting Deford, and separate punishment was therefore proper under section 654. But the offense continued as long as he possessed the weapon, and the facts show unambiguously that during that possession— that is, during the continuing commission of the offense—he used the firearm to kill Deford. In the circumstances, we see no error in imposing a sentence and enhancements for count 2 that reflected his use of the firearm.

## VII. One-Year Term for Firearm Enhancement

In sentencing defendant for count 2, possession of a firearm by a felon (§ 29800), the trial court imposed a one-year term under section 12022, subdivision (a)(1), which provides for an additional year of imprisonment for "a person who is armed with a firearm in the commission of a felony or attempted felony . . . unless the arming is an element of that offense."

Defendant contends this was error, and the Attorney General correctly concedes this point. Courts have consistently concluded that the section 12022, subdivision (a)(1) enhancement does not apply to the offense of felon in possession of a firearm. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1027, fn. 3, 1032 ["a defendant convicted of violating section [29800] does not, regardless of the facts of the offense, risk imposition of additional punishment pursuant to section 12022"], disapproved on another point in *Frierson, supra,* 4 Cal.5th at p. 240, fn. 8; *People v. Hicks* (2014) 231 Cal.App.4th 275, 283–284; see *People v. Conley* (2016) 63 Cal.4th 646, 659.)

31

We agree that the one-year enhancement was erroneously imposed and must be stricken.

## DISPOSITION

The one-year arming enhancement (§ 12022, subd. (a)(1)) is stricken. The trial court's true findings regarding the prior felony allegations under sections 667, subdivision (a) and the Three Strikes law are reversed, and defendant's sentence is vacated. The matter is remanded for retrial of the prior conviction allegations and resentencing in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*People v. Hiller* (A165126)

Trial Court:          Del Norte County Superior Court

Trial Judge:          Hon. Darren McElfresh

Counsel:              J. Wilder Lee, under appointment by the Court of Appeal,
                         for Defendant and Appellant

                      Rob Bonta, Attorney General of California, Lance E.
                         Winters, Chief Assistant Attorney General, Jeffrey M.
                         Laurence, Senior Assistant Attorney General, Eric D.
                         Share, Supervising Deputy Attorney General, and Kelly
                         A. Styger, Deputy Attorney General for Plaintiff and
                         Respondent

*People v. Hiller* (A165126)